**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

|  |  |
|---|---|
| LATOYA JOHNSON, *et al.*, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 7:24-cv-00144-MFU-CKM |
| v. | CLASS ACTION |
| PHYSICIANS TO WOMEN, INC. and MID-ATLANTIC WOMEN'S CARE, PLC, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL AND TO
DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE
CLASS**

Following nearly ten months of intense litigation, and correspondingly hard-fought settlement negotiations, the Parties have reached a Settlement to resolve all claims arising from the Security Incident experienced by Defendants Physicians to Women, Inc. ("PTW") and Mid-Atlantic Women's Care, PLC ("MAWC") ("Defendants") in April of 2023 (the "Security Incident"). The Settlement creates a non-reversionary common fund of $918,510.00 to pay benefits to Settlement Class Members, including (1) reimbursement for Out-of-Pocket Losses; (2) *Pro Rata* Cash Payments; (3) Credit Monitoring Services; (4) Settlement Administration, Notice, Costs and Expenses; (5) service award payments approved by the Court; and (6) attorneys' fees and expenses awarded by the Court. In addition, and separate from the Settlement Fund, Defendants will confirm that they have taken steps to enhance their information security at their own cost, which will ensure Plaintiffs' and the Settlement Class's information is protected in the future.

The Settlement is a strong result for the Settlement Class, securing valuable benefits while

eliminating the risks of continued litigation. The Settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). Plaintiffs thus move for an order preliminarily approving the Settlement and directing class notice and scheduling a Final Approval Hearing. In support of their motion, Plaintiffs submit the Settlement Agreement (attached as Exhibit 1 to the Joint Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Decl.") filed herewith, with its attached sub exhibits: Ex.A, Short Form Notice; Ex.B, Long Form Notice; Ex. C, Publication Notice; Ex. D, Claim Form, and; Ex.E, Proposed Preliminary Approval Order.[1]

---

[1] Capitalized terms in this brief shall have the same meaning as defined in the Settlement Agreement.

## FACTUAL BACKGROUND

### A.    Overview of the Litigation

MAWC is a healthcare group created in 1997 by the merger of 11 independent obstetric and gynecological physician groups. Doc. 31 at ¶ 22 ("Compl."). Today, the MAWC group consists of over 140 providers and serves a geographic area from northeastern North Carolina to Hampton Roads to as far west as Roanoke, Virginia. *Id.* PTOW, a division of MAWC, specializes in obstetric and gynecological care in Roanoke. *Id.* ¶ 21.

On or around April 2023, Defendants identified a Security Incident that involved a potential attack on one of their servers. *Id.* ¶ 35. Defendants' investigation of the Security Incident determined that the files at issue contained names, Social Security numbers, birth dates, and medical/health information of current and former patients. *Id.* Starting on January 26, 2024, Defendants began sending notices to individuals potentially affected, including to Plaintiffs Latoya Johnson, Janet Hall, and Virginia Trupia-Lash (collectively "Plaintiffs") and other persons similarly situated, notifying them of the Security Incident. *Id.* ¶¶ 35, 117, 126, 135. In all, over **91,851** putative Class Members' personally identifying information ("PII") and Protected Health Information ("PHI") (together, "Personal Information") was at issue in the Security Incident. Joint Decl., ¶5.

After the firms representing Plaintiffs were each respectively retained by Plaintiffs, each firm conducted an initial, but extensive, investigation of the Security Incident and Defendants. Joint Decl., ¶ 6. Plaintiff Johnson filed a putative Class Action Complaint on February 23, 2024, in the United States District Court for the Western District of Virginia. Doc. 1. Plaintiff Hall filed a related case in the Western District of Virginia on March 7, 2024. On May 10, 2024, Plaintiffs Johnson, Hall, and Trupia-Lash filed a Consolidated Class Action Complaint. Doc. 26. On July

24, 2024, Plaintiffs filed a Second Amended Consolidated Class Action Complaint adding Defendant Mid-Atlantic Women's Care, PLC. Doc. 31. In the Complaint, Plaintiffs assert claims against Defendants for negligence, negligence *per se*, breach of fiduciary duty, breach of implied contract, and unjust enrichment. *Id.*

Defendants denied all allegations in Plaintiffs' Complaint. Recognizing the risks and continued costs of litigation, Plaintiffs and Defendants decided to engage in private, arms-length negotiations with the assistance of mediator Rodney Max to resolve all matters associated with the litigation. Joint Decl., ¶ 7-8.

### B.    Mediation and Settlement

On October 28, 2024, the Parties participated in a full-day mediation facilitated by an experienced mediator, Rodney Max. Joint Decl., ¶ 8. In preparation for this mediation, Plaintiffs requested and Defendants produced preliminary discovery, which included detailed information regarding the number of individuals by state and in total whose information was at issue; the types of Personal Information and any data potentially or actually compromised in the Security Incident; the total number of individuals provided notice of the Security Incident; and the number of individuals that took advantage of the offer made by Defendants for complimentary identity monitoring services. *Id.*, ¶ 9. After a full day of negotiations, the parties had not reached an agreement. *Id.*, ¶ 10. Shortly thereafter, and following additional negotiations between the parties, the parties came to an agreement in principle and later finalized the terms in the Settlement Agreement and the attached exhibits. *Id.*, ¶ 11.

### C.    The Terms of the Proposed Settlement

The following are the material terms of the Settlement:

#### 1.    The Settlement Class

The proposed Settlement Class is defined as follows:

4

"Settlement Class" means all individuals residing in the United States whom
Defendants identified as having data at issue in the Security Incident.

Excluded from the Settlement Class are: (i) PTW, its officers and directors; (ii) MAWC, its officers

and directors; (iii) all Settlement Class Members who timely and validly request exclusion from

the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any

other person found by a court of competent jurisdiction to be guilty under criminal law of initiating,

causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads

*nolo contendere* to any such charge. Ex. 1, § 7.1.

## 2.    The Settlement Fund

Defendants will pay $918,510.00 into a non-reversionary Settlement common fund to pay

benefits to Settlement Class Members, including (1) reimbursement for Out-of-Pocket Losses

fairly traceable to the Security Incident; (2) a *pro rata* Cash Payment; (3) Credit Monitoring

Services; (4) Settlement Administration Notice, Costs and Expenses; (5) service award payments

approved by the Court; and (6) attorneys' fees and expenses awarded by the Court. These

Settlement benefits include:

- Reimbursement for Out-of-Pocket Losses. All Settlement Class Members may
  submit a claim for Out-of-Pocket Losses up to $10,000 per individual, subject to a *pro rata* (proportional) adjustment depending upon the number of valid claims. The Settlement
  Fund will be used to pay valid and timely submitted claims for unreimbursed costs
  or expenditures incurred by a Class Member in responding to the Security Incident
  that were incurred between April 4, 2023 and seven days after the Claims Deadline,
  as a result of the Security Incident. Out-of-Pocket Losses may include, without
  limitation, the following: unreimbursed bank fees, long distance phone and cell
  phone charges (only if charged by the minute), data charges (only if charged based
  on the amount of data used), postage or gasoline for local travel, and Fees for credit
  reports, credit monitoring or other identity theft insurance products purchased as a
  result of the Security Incident. Ex. 1, § 2.1(b).

- *Pro Rata* Cash Payment. Settlement Class Members may claim a *pro rata* portion of
  the Net Settlement Fund. *Id.*

- Credit Monitoring/Identity Theft Protection Services. Settlement Class Members
  who submit a claim can elect to enroll in two (2) years of one-bureau credit
  monitoring, two (2) years of medical monitoring through CyEx Medical Shield, and

$1 million in medical identity theft insurance, among other features. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a claim for Out-of-Pocket Losses under the settlement. Ex. 1, § 2.2(a).

### 3.    Proposed Notice and Claims Program

Class Counsel have retained and request that the Court appoint Kroll Settlement Administration, LLC, as Settlement Administrator to provide notice to class members and to process claims. The Notice Program satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by drawing on the most efficient techniques used in commercial advertising to inform the class and stimulate participation. Ex. 1, § 4.2-3. The Notice Program includes the dissemination of individual, direct notice by postcard with detachable claim form mailed to each Settlement Class Member for whom Defendants can ascertain a mailing address from its records with reasonable effort. *Id.*, § 4.1-2; and Ex. A to Ex. 1. For Settlement Class Members for whom Defendants are not able to ascertain a mailing address from its records with reasonable effort, the Settlement Administrator will use reasonable efforts to identify a mailing address and mail the postcard notice to such address. *Id.*, § 4.2. And if any postcard notices are returned undeliverable, the Settlement Administrator will use reasonable efforts to identify updated mailing addresses and resend the postcard notice to the extent updated addresses are identified. *Id.* The Notice Program also includes the publication of a long form notice on a dedicated settlement website (the "Settlement Website") and publication of a Notice on the website, www.ptow.com. *Id.*, § 4.3; Exs. B and C to Ex.1.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to file claims electronically on the Settlement Website or by mail; and the establishment and maintenance of a Toll-Free Help Line for Settlement Class Members to call with settlement-related inquiries. *Id.*, § 4.3; Claim Form, Ex. D to Ex. 1.

## 4. Opt-Outs and Objections

To opt-out of the Settlement's benefits, Settlement Class Members can submit a Request for Exclusion to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline, the "Opt-Out Deadline." *Id.* § 5.1. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion," or a comparable statement that the individual does not wish to participate in the Settlement, or some other clear manifestation of the intent to opt-out of the Settlement in the written communication. *Id.* § 5.1(a).

To object, Settlement Class Members must file written objections with the Court no later than 60 days after the Notice Deadline, the "Objection Deadline." *Id.* § 1.2. A written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) the identity of any attorneys representing the objector (if any); (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a statement identifying all class action settlements objected to by the Class Member in the previous five (5) years; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* § 5.2.

## 5. Attorneys' Fees and Expenses and Service Awards

Class Counsel may separately move for a fee not to exceed 33.33% of the Settlement Fund (i.e. $306,139.38) and reimbursement of litigation expenses in an amount not to exceed $20,000.00, subject to Court approval. Ex.1 § 11.1. Class Counsel may also request service awards of up to $5,000 each for the three Settlement Class Representatives. *Id*. § 10.1.

## 6. Releases

The Settlement Class will release Defendants and all Related Entities from claims that were

or could have been asserted in this case, including Unknown Claims. Ex. 1 § 1.28, 9.1-3.

## **ARGUMENT**

### I.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AND DIRECT NOTICE TO THE SETTLEMENT CLASS

When binding absent class members—as contemplated by the Settlement here—the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2)" by finding that the Settlement is "fair, reasonable, and adequate"; and (ii) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)-(2). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, and prior to the 2018 amendment of the Federal Rules, the Court's Rule 23(e) obligations were addressed with a "two-level analysis" that largely overlaps with Rule 23. *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube*:

"(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-59 (4th Cir. 1991)*. To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*.

Evaluation under both these factors and those enumerated in Rule 23 confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should issue notice of the Settlement to the Settlement Class.

## A.    The Class Was Adequately Represented.

"The adequacy requirement is met when the named representative possesses the same interests and suffers the same injury as the proposed class members." *Adair v. EQT Prod. Co.*, No. 1:10-cv-00037, 2013 U.S. Dist. LEXIS 142005, at *125 (W.D. Va. June 5, 2013) (citation omitted). Adequacy also contemplates "the conflicts and competency of class counsel." *Harris v. Rainey*, 299 F.R.D. 486, 491 (W.D. Va. 2014). Here, the Settlement Class Representatives have the same interests as other Class Members as they are asserting the same claims and share the same injuries. The Settlement Class Representatives actively participated in the litigation including, at all times, regularly maintaining contact with counsel, assisting in the investigation of the case, reviewing their respective Complaint(s), producing information and documentation to Class Counsel, remaining available for consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. Joint Decl., ¶ 17.

9

Further, the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Joint Decl., ¶¶ 6-11; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### B.    The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the Amended Complaint; the Parties' vigorous pursuit of facts (including independent investigation and the exchange of informal discovery); the length and difficulty of the negotiations; and the involvement of an experienced mediator, Rodney Max. Joint Decl., ¶¶ 7-11; *see also Domonoske v. Bank of Am., N.A.*, Civil Action No. 5:08cv066, 2010 U.S. Dist. LEXIS 7242, at *51 (W.D. Va. Jan. 27, 2010) (adversarial encounters support a finding of arms' length negotiations).

### C.    The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits to be paid from a $918,510.00 non-reversionary Settlement Fund that are tailored to the relief sought through the litigation: (i) recovery of up to $10,000 in Out-of-Pocket Losses spent dealing with the Security Incident; (ii) a cash payment to address the alleged loss of time, alleged loss of privacy, alleged diminution in the value of their Personal Information, and alleged loss of the benefit of the bargain; and (iii) two years of credit monitoring and medical monitoring to help detect and remediate potential identity theft and fraud. Moreover, the overall value of the Settlement is well within the range of data breach class action settlements approved across the country. *See* Joint Decl. ¶ 15.

Class Counsel, a group with extraordinary experience in leading data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Joint Decl., ¶¶ 3-4, 12, 14. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### 1.      The costs, risk, and delay of trial and appeal.

Plaintiffs faced significant risks and costs should they continue to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, a motion dismiss. Second, even if Plaintiffs' claims had survived a motion to dismiss, Plaintiffs still would have faced significant risks, costs, and delays from discovery, class certification, a likely motion for summary judgment, trial, and likely interlocutory and post-judgment appeals.

In contrast to the risks, costs, and delay posed by the pending motions and possible appeals and trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement Class Members with valid claims for Out-of-Pocket Losses will receive guaranteed compensation and provides Settlement Class Members with access to credit monitoring services, benefits that may not have been available at trial.

The substantial costs, risk, and delay of a further litigation support a finding that the proposed Settlement is adequate.

### 2.      The method of distributing relief is effective.

The proposed distribution process will be efficient and effective. The available relief is

detailed clearly in the Notices, which will be provided directly to all Settlement Class Members for whom a current address is identified as well as through publication, and lays out the benefits to which they are entitled.

As an initial matter, the Notice Program advising the Settlement Class of the available relief will be efficient and effective. The Notice Program includes the dissemination of individual notice by postcard (via direct mail) and the publication of a long form notice on the Settlement Website and publication of Notice on the website, www.ptow.com. Ex. 1, §4.1-2; Exs. A-C to Ex.1.

Therefore, Settlement Class Members will receive effective and efficient notice of the relief, including, (1) reimbursement for fairly traceable Out-of-Pocket Losses; (2) *pro rata* Cash Payments from the Net Settlement Fund; and (3) Credit Monitoring Services. Ex. 1, § 2.1(b), 2.2. Settlement Class Members who submit a Claim Form can then receive payment of their claim via check by mail, or via PayPal, Venmo, or such other electronic payment platform deemed efficient and appropriate by the Claims Administrator. Ex. 1, § 2.1(c).

Because Settlement Class Members may make claims through a simple online form or by mail, the method of distributing relief is both efficient and effective and the proposed Settlement is adequate under this factor.

### 3. The terms relating to attorneys' fees are reasonable.

Class Counsel will request a fee expressed as a percentage of the value conferred by the Settlement on the Settlement Class, and for reimbursement of expenses incurred in prosecuting and settling this case. Ex. 1, § 11.1. Where, as here, a class settlement creates a non-reversionary common fund, the majority of courts consistently apply a "percentage of the fund" approach because it "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys."

*See, e.g.*, *Domonoske*, 790 F. Supp. 2d 466, 475 (quoting *The Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 471 (S.D. W. Va. 2010)). The Settlement Agreement provides that Settlement Class Counsel may request fees not in excess of one-third (33.33 percent) of the common fund, but the ultimate fee award will be determined by the Court's discretion, based on an application in accordance with Fourth Circuit law which provides an opportunity for comment from Settlement Class Members. Ex. 1, ¶ 11.1.

Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. *Id*. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses.[2] The proposed Settlement is adequate under this factor.

### 4.    Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)-(3). Here, there is no such agreement. As such, this factor weighs in favor of finding that the Proposed Settlement is adequate.

### D.    The Proposed Settlement Treats Class Members Equitably.

Finally, the proposed Settlement treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file

---

[2] Similarly, Class Counsel will request service awards of $5,000 for each of the Settlement Class Representatives. Service awards of this size are reasonable. *See Compton v. N. Cent. Va. Rests., Inc.*, Civil Action No. 5:20-cv-00073, 2022 U.S. Dist. LEXIS 159070, at *16 (W.D. Va. Sep. 2, 2022) (granting service award of $5,000); *Hale v. CNX Gas Co., LLC*, No. 1:10-cv-00059, 2018 U.S. Dist. LEXIS 230770, at *5 (W.D. Va. Aug. 23, 2018) (same).

a claim for Out-of-Pocket Losses; this means that monetary compensation will be apportioned in accordance with each claimant's injury. Ex. 1, § 2.1(b). Additionally, all Settlement Class Members may claim a *pro rata* portion of the Net Settlement Fund (after payments for Credit Monitoring, Out-of-Pocket Losses, notice and claims administration, attorneys' fees and costs, and service awards), with no Settlement Class Member obtaining any greater relative benefit over another. *Id.* This factor likewise supports a finding that the Court will be able to approve the proposed Settlement, and that class notice is appropriate.

### E. Factors Traditionally Evaluated by Fourth Circuit Courts Weigh in Favor of Preliminary Approval.

#### 1. The Settlement Meets Traditional Criteria for Fairness.

Factors set forth by the Fourth Circuit in *Jiffy Lube* pertaining to the fairness of a given settlement support preliminary approval here. *See In re Jiffy Lube Securities Litigation*, 927 F.2d at 158-59.

*First,* the posture of the case supports approval of Settlement. Though early in litigation, Plaintiffs have conducted an extensive investigation of the claims and significant informal discovery was exchanged both prior to and during the mediation that allowed the Parties to fully evaluate the claims, defenses, and litigation risks at issue. Joint Decl. ¶¶ 6, 9.

*Second,* the extent of discovery conducted supports approval. Such discovery includes a pre-mediation exchange of information including detailed information regarding the number of individuals by state and in total whose information was at issue in the Security Incident; the types of Personal Information and any data at issue in the Security Incident; the total number of individuals provided notice of the Security Incident; and the number of individuals that took advantage of the offer made by Defendants for complimentary identity monitoring services. *Id.* Extensive formal discovery is not a necessary prerequisite to approval. *See Domonoske* 790 F. Supp.

2d 466, 473 (finding "burdensome, expensive discovery that seems to plague so many class actions" unnecessary to support approval where case is straight forward and the record was adequately developed).

*Third,* the arms'-length and adversarial nature of negotiations—which took place with the assistance of a third-party mediator—supports approval of Settlement. *Domonoske v. Bank of America*, U.S. Dist. LEXIS 7242, at *51 (W.D. Va. Jan. 27, 2010) (the use of mediator supports a finding of arms'-length negotiations).

*And finally,* the extensive experience of counsel supports a finding of fairness. Counsel here has deep experience in both class actions generally and data breach class actions in particular and support the Settlement as fair, reasonable, and adequate. Joint Decl. ¶¶ 3-4, 21, Exs. 2, 3, and 4; *see Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. June 8, 1995) (opining class counsels' "wealth of experience and knowledge" supported a finding a fairness).

### 2.    The Settlement Meets Traditional Criteria for Adequacy.

An analysis of factors pertaining to the adequacy of a settlement also support preliminary approval here. *See In re Jiffy Lube Securities Litigation*, 927 F.2d at 158-59.

The first, second and third factors traditionally considered by Fourth Circuit courts pertaining to adequacy—the relative strength of plaintiff's case on the merits, the existence of difficulties presented by proof and/or defenses, and the anticipated duration and expense of additional litigation—all support a finding of adequacy. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *4-5 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class

certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, while early settlement has allowed costs to stay modest,—protracted litigation would only serve to increase costs and have a potentially negative affect on Class recovery, which is itself far from certain. Continued litigation would also increase the burden on the court, without any guaranteed benefit to Plaintiffs or Settlement Class Members. "Complex litigation ... 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. Nor-Am Chem. Co.*, CIVIL NO. 94-0780-CB-C, 1996 U.S. Dist. LEXIS 7372, at *61-62 (S.D. Ala. May 23, 1996), *quoting In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992)). Where a settlement, like here, "will alleviate the need for judicial exploration of . . . complex subjects [and] reduce litigation costs" this factor weighs in favor of approval. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

The *fourth* factor traditionally considered by Fourth Circuit Courts—the solvency of the Defendants and the likelihood of recovery on a litigated judgment—has not been placed at issue here and thus neither weighs for or against approval of settlement.

*And finally,* there has been no opposition to the Settlement. While this factor will be re-examined at final approval, after notice has issued to the Class and Settlement Class Members have had an opportunity to respond, it currently weighs in favor of a finding of adequacy.

## II.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION AT THE SETTLEMENT STAGE.

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Such a decision should not be difficult here. Settlement classes are routinely certified in similar

16

consumer data breach cases. *See, e.g.*, *Abubaker v. Dominion Dental United States*, Civil Action No. 1:19-cv-01050-LMB-MSN, 2021 U.S. Dist. LEXIS 252202 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019); *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom Watkins v. Spector,* 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

## A.    The Rule 23(a) Requirements Are Satisfied.

*Numerosity:* The proposed Settlement Class consists of approximately 91,851 putative Class Members, indisputably rendering individual joinder impracticable. *See Talbott v. GC Servs., Ltd. Pshp.*, 191 F.R.D. 99, 102 (W.D. Va. 2000) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

*Commonality:* "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 "Even a single common question will do." *Id.* at 359 (internal quotations omitted). All Settlement Class Members are alleged to have suffered the same injury—theft of their personal data in the Security Incident—and are asserting the same legal claims. Accordingly, common questions of law and fact abound for purposes of certifying the Settlement Class. *See, e.g.*, *Abubaker v. Dominion Dental United States*, Civil Action No. 1:19-cv-01050-LMB-MSN, 2021 U.S. Dist. LEXIS 252202, at *7-8 (E.D. Va. Nov. 19, 2021);

*Equifax*, U.S. Dist. LEXIS 118209, at *179-180; *Anthem*, 327 F.R.D. at 309.

**Typicality:** Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class…." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (citation and quotations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. This requirement is readily satisfied in data breach cases. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the same Security Incident and involve the same overarching legal theories, including the theories that Defendants allegedly breached their common law, statutory and contractual duties to protect Settlement Class Representatives' and Class Members' personal information. *See, e.g. Dominion* 2021 U.S. Dist. LEXIS 252202, at *8-9.

**Adequacy of Representation:** "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.* 521 U.S. at 625 (1997). Settlement Class Representatives do not have any interests antagonistic to other Class Members and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. Joint Decl. ¶ 3.

### B.  The Rule 23(b)(3) Requirements Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a

settlement class. *Amchem* 521 U.S. at 620.

***Predominance:*** Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Id.* at 624. Where the "overarching issue" in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues. *Adair v. EQT Prod. Co.*, 320 F.R.D. 379, 426 (W.D. Va. 2017). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of alleged conduct by Defendants. *See, e.g.*, *Dominion* 2021 U.S. Dist. LEXIS 252202, at *10; *Equifax*, U.S. Dist. LEXIS 118209, at *183-185; *Anthem,* 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312.

***Superiority:*** "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy…." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 91,851 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Equifax*, U.S. Dist. LEXIS 118209, at *185-187; *Anthem,* 327 F.R.D. at 315-16.

III.   **THE COURT SHOULD APPROVE THE NOTICE PLAN, NOTICES, AND CLAIM FORM, AND APPOINT THE SETTLEMENT ADMINISTRATOR.**

To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that notice be reasonably disseminated to those who would be bound by the court's judgment. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint Kroll as the Settlement Administrator and approve the Notice Plan outlined in the Settlement Agreement[3]. *Supra* Factual Background § C.3. The Notice Plan is uncomplicated and, when implemented, will provide the best notice practicable under the circumstances. *See also* Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class).

The Court should also approve the proposed forms of notice attached as Exhibits A, B and C to Exhibit 1 of Joint Decl. ("Notices"), which satisfy all of the criteria of Rule 23. The Notices are clear, straightforward, and provide persons in the proposed Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notices also advise the proposed Settlement Class how to exclude themselves from the Settlement, and how to object to the Settlement, including the requested attorney fees and costs. Thus, the Notices satisfy the

---

[3] Further information about Kroll and the Notice Plan are attached hereto as Exhibit 1 ("Kroll Declaration").

requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Finally, the Court should approve the Claim Form attached as Exhibit D to Exhibit 1. The Claim Form is written in plain language and can be submitted online or printed and mailed to the Settlement Administrator.

## IV.    THE COURT SHOULD APPOINT SETTLEMENT CLASS COUNSEL.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Throughout this case, Lead Counsel, Andrew J. Shamis of Shamis & Gentile P.A., Gary Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and Raina Borrelli of Strauss Borrelli PLLC, have demonstrated the hard work, legal scholarship, experience, and resources they bring to bear, ultimately resulting in the Settlement now before the Court. Joint Decl. ¶¶ 6-11, 20. The Court should thus appoint them as Settlement Class Counsel under Rule 23(g).

## TIMELINE OF SETTLEMENT EVENTS

For convenience, proposed dates and deadlines leading to a Final Approval Hearing are provided below and in the proposed order separately submitted to the Court.

| Event | Timing |
|---|---|
| Deadline for Defendants to provide Settlement Class List to Claims Administrator pursuant to the Settlement Agreement | [10 days after entry of this Order] |
| Notice Program Commencement ("Class Notice Date") | [30 days after entry of this Order] |
| Deadline for Class Counsel to file motion for attorneys' fees, costs, expenses and service awards | [21 days before Objection Deadline and Opt-Out Deadline] |
| Objection Deadline | [ 60 days after the Class Notice Date] |
| Opt-Out Deadline | [60 days after the Class Notice Date] |
| Claims Deadline | [90 days after the Class Notice Date] |
| Deadline for Plaintiffs to file motion for final approval of settlement and responses to any timely submitted Class member objections, which shall include a declaration from the Claims Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | [21 days prior to Final Approval hearing] |
| Final Fairness Hearing | _____, 2024 at _: _ _.m. in Courtroom ____<br>[No earlier than (i) 100 days after Defendants notify the appropriate government officials pursuant to Class Action Fairness Act, 28 U.S.C. § 1715(d) or (ii) 60 days after the Claims Deadline, whichever is later] |

## <u>CONCLUSION</u>

For the reasons set forth set forth above, Plaintiffs request the Court enter the order proposed by the Parties preliminarily approving the Settlement Agreement, directing the Settlement Class be notified of the proposed Settlement in the manner set forth in the Notice Plan, and schedule a Final Approval Hearing.

Dated: February 13, 2025

Respectfully Submitted,

*/s/ Lee A. Floyd*
Lee A. Floyd (VSB #88459)
Sarah G. Sauble (VSB #94757)
BREIT BINIAZAN, PC
2100 E. Cary Street, Suite 310
Richmond, VA 23223
(804) 351-9040
(757) 670-3939
lee@bbtrial.com
sarah@bbtrial.com

Andrew J. Shamis, Esq. (*pro hac vice*)
SHAMIS & GENTILE P.A.
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

David Lietz (*pro hac vice*)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
dlietz@milberg.com

Raina Borrelli (*pro hac vice*)
STRAUSS BORRELLI PLLC
980 N Michigan Ave, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

*Counsel for Plaintiffs and the Putative Class*

### CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Lee A. Floyd
Lee A. Floyd (VSB #88459)