**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| LATOYA JOHNSON, *et al.*, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br>            v.<br><br>PHYSICIANS TO WOMEN, INC. and MID-ATLANTIC WOMEN'S CARE, PLC,<br><br>                 Defendants. | Case No. 7:24-cv-00144-MFU-CKM<br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Latoya Johnson, Janet Hall, and Virginia Trupia-Lash (collectively, "Plaintiffs"),

by and through the undersigned Settlement Class Counsel,[1] on behalf of themselves and the

Settlement Class, submit this Memorandum of Law in support of their Unopposed Motion for Final

Approval of Class Action Settlement.

## I.      INTRODUCTION

Plaintiffs and their Counsel secured an outstanding settlement on behalf of the Settlement

Class, and now bring that Settlement before the Court for final approval. If approved, the

Settlement will successfully resolve the claims of approximately 91,851 individuals nationwide

who were notified of a security incident that Defendants Physicians to Women, Inc. ("PTW") and

Mid-Atlantic Women's Care, PLC ("MAWC") ("Defendants") experienced in April 2023 (the "

---

[1] The Court previously appointed Andrew Shamis of Shamis & Gentile, P.A., David Lietz of Milberg Coleman Bryson Phillips Grossman, LLC, and Raina C. Borrelli formerly of Turke & Strauss LLP, now of Strauss Borrelli PLLC, as Settlement Class Counsel. Doc. 58 ¶ 2.

"Security Incident").[2] Defendants' investigation of the Security Incident determined that Personal information – including names, Social Security numbers, birth dates, and medical/health information of current and former patients — was in files at issue in the Security Incident.

As discussed below, the Settlement creates a non-reversionary common fund of $918,510.00 to pay benefits to Settlement Class Members, including (1) reimbursement for Out-of-Pocket Losses of up to $10,000; (2) *Pro Rata* Cash Payments now estimated to be between $113 and $124 per valid claim; (3) two years of medical identity theft protection and credit monitoring services; (4) notice and administration costs; (5) service award payments approved by the Court; and (6) attorneys' fees and expenses awarded by the Court. The costs of notice and administration are presently estimated to be at least $156,947.71. *See* Declaration of Andrea Dudinsky of Kroll Settlement Administration, LLC in Connection with Final Approval of Settlement ("Kroll Decl."), attached hereto as **Exhibit 1**, ¶ 23. This includes $75,900.76 already billed, and Kroll estimates that it will bill an additional $81,046.95 to complete the administration of this Settlement. *Id.* The Settlement affords meaningful relief to the Settlement Class and resolves their injuries without the further delay, risk, and expense of continued litigation.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and prolonged arms' length negotiations, including a full day mediation session on October 28, 2024 with Rodney Max, Esq., an experienced mediator. Although the Parties did not come to an agreement during the session, the Parties continued to negotiate and ultimately reached an agreement-in-principle. From there, the Parties

---

[2] Unless otherwise defined, all capitalized terms have the meaning set forth in the Settlement Agreement. Doc. 53-1.

collaborated to arrive at the Settlement presently before the Court for final approval. On May 12, 2025, this Court preliminarily approved the proposed Settlement.

Following preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to the majority of Settlement Class Members via U.S. Mail. Direct Class Notice was sent to the 62,400 Settlement Class Members (which are all the Settlement Class Members for whom Defendants had good addresses), and was successfully received by roughly 97.4% of the Settlement Class for whom Defendants had mailing addresses. *See* Kroll Decl. ¶ 15. Because Defendants did not have addresses for a significant percentage of the Settlement Class, Kroll also employed an online media campaign that garnered over 3.55 million impressions, and supplemented that online campaign with a press release that resulted in approximately 500 syndicated postings. *Id*. ¶¶ 11-12. The combination of direct and publication notice resulted in notice "reaching" over 70% of potential Settlement Class Members with an estimated average frequency of 1.4 times. *Id*. ¶ 16..

The Notice provided Settlement Class Members with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. No Settlement Class members have sought to be excluded from the Settlement, and none have objected. *See* Declaration of Settlement Class Counsel in Support of Final Approval of Class Action Settlement ("Counsel Decl."), attached hereto as **Exhibit 2**, ¶ 8. The Notice program was efficient and effective, and since the Court granted preliminary approval, nothing has changed to alter the initial finding that the Settlement is fair, reasonable, and adequate. The Claims Period deadline is September 9, 2025.

For the reasons detailed below, Plaintiffs submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs respectfully request that the Court finally approve the Settlement, certify the Settlement Class, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards, and enter a final judgment dismissing the case.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement filed on February 13, 2025, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. Doc. 52. Plaintiffs also incorporate by reference Plaintiffs' Motion and Memorandum of Law in Support for Attorneys' Fees, Expenses, and Class Representative Service Awards, filed on July 28, 2025. Docs. 62 and 63.

## III.    SUMMARY OF SETTLEMENT

### A.  The Settlement Class

The Settlement Class preliminarily approved by the Court is defined as follows:

All individuals residing in the United States whom Defendants identified as having data at issue in the Security Incident.

Doc. 58 (Preliminary Approval Order) ¶ 1. Excluded from the Settlement Class are: (i) PTW, its officers and directors; (ii) MAWC, its officers and directors; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. *Id.*.

**B.  Settlement Benefits**

Defendants will pay $918,510.00 into a non-reversionary Settlement Fund to pay benefits to Settlement Class Members, including (1) reimbursement for Out-of-Pocket Losses fairly traceable to the Security Incident; (2) a *pro rata* Cash Payment; (3) Credit Monitoring Services; (4) notice and administration costs; (5) service award payments approved by the Court; and (6) attorneys' fees and expenses awarded by the Court. These Settlement benefits include:

- <u>Reimbursement for Out-of-Pocket Losses</u>. All Settlement Class Members may submit a claim for Out-of-Pocket Losses up to $10,000 per individual.

- <u>Pro Rata Cash Payment</u>. Settlement Class Members could claim a *pro rata* portion of the Settlement Fund to be paid after payments for Credit Monitoring, Out-of-Pocket Losses, notice and claims administration, attorneys' fees and costs, and service awards.

- <u>Credit Monitoring/Identity Theft Protection Services</u>. Settlement Class Members could claim two (2) years of one-bureau credit monitoring, two (2) years of medical monitoring through CyEx Medical Shield, and $1 million in medical identity theft insurance, among other features.

**C.  Fees, Costs, And Service Awards**

As compensation for the substantial benefit conferred upon the Settlement Class Members, Plaintiffs previously moved for an award of attorneys' fees in the amount of $306,139.38, expenses in the amount of $11,284.05, and Class Representative Service Awards in the amount of $5,000 for each Class Representative, totaling $15,000. *See* Doc. 63.

**D.  Notice And Claims**

Notice was carried out by Kroll Settlement Administrator, LLC ("Kroll" or the "Settlement Administrator"), pursuant to the Settlement Agreement and Preliminary Approval Order. *See* Doc. 58 ¶ 6. Before mailing, Settlement Class Members' mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service. *See* Kroll Decl., ¶ 7.

5

Kroll's diligent notice efforts resulted in a successful and effective direct-mail campaign. Of the 62,400 Short Form Notices mailed to Class Members whose addresses passed validation, 222 were returned by the USPS with forwarding addresses—220 were automatically re-mailed by USPS, and the remaining 2 were promptly re-mailed by Kroll. *Id*. ¶¶ 10, 13. An additional 6,846 Notices were returned as undeliverable without forwarding addresses. *Id*. ¶ 14. Kroll conducted advanced address searches for all 6,846 records, which yielded 5,210 updated addresses. *Id*. Of those, 4,801 Notices have already been re-mailed, and the remaining 409 will be mailed on August 15, 2025. *Id*. Only two of the re-mailed Notices have been returned undeliverable a second time. *Id*. Based on these efforts, Kroll estimates that direct Notice successfully reached approximately 60,762 of the 62,400 Class Members—reflecting a 97.4% direct-mail reach rate. *Id*. ¶ 15.

Because Defendants did not have addresses for approximately one-third of the Settlement Class, Kroll also employed a notice by publication plan that included an online media campaign and a press release. The required online media campaign commenced on June 11, 2025, and was substantially completed by July 11, 2025. Kroll Decl. ¶ 11. Impressions were served via online display ads, Facebook, and Instagram. The digital media ads were targeted to Virginia women 18 years of age or older as well as to a broader audience of adults 18 years of age or older nationwide. *Id.* A total of 3,553,959 impressions[3] were delivered. *Id.*

On June 11, 2025, a press release was issued in English over PR Newswire's US1 National Newsline with supplemental distribution to influencers in the healthcare category. Kroll Decl. ¶ 12. PR Newswire distributes to thousands of print and broadcast newsrooms nationwide, as well

___

[3] An "impression" is each time an ad is displayed, whether that's in search results or elsewhere on the internet.

as websites, databases and online services. *Id*. Approximately 500 syndicated postings of the settlement resulted from the press release. *Id*.

According to Kroll (a notice specialist), the reach rate of the direct individual notice effort combined with the supplemental publication plan achieved over 70% reach of potential Settlement Class Members with an estimated average frequency of 1.4 times. Kroll Decl. ¶ 16. This reach rate is consistent with other court-approved best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id*.

In addition to the direct mail and publication notice, throughout the notice and claims process, Kroll maintained a dedicated Post Office Box for the Settlement Program. *Id*. ¶ 3. This P.O. Box served as a location for the USPS to return undeliverable program mail to Kroll and for Settlement Class Members to submit paper claims, Opt-Outs, and other settlement-related correspondence. *Id*. The P.O. Box address appears prominently in all Notices and in multiple locations on the Settlement Website. Kroll has monitored the P.O. Box throughout the claims period and employs a dedicated mail intake team to process each item received. *Id*.

Moreover, Kroll published and continues to maintain the Settlement Website, www.ptwandmawcsettlement.com. *Id*. ¶ 8. Visitors to the Settlement Website can download the Long Form Notice, the Short Form Notice, the Claim form, as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, Motions filed by Class Counsel, and Orders of the Court. *Id*. Visitors were also able to submit claims electronically, contact the Settlement Administrator directly, and find answers to frequently asked questions ("FAQs"), important dates and deadlines, and contact information for the Settlement Administrator. *Id*.

Kroll also established a toll-free telephone number, 1-833-421-9603 (the "Toll-Free Number"), which is available twenty-four hours per day, seven days a week. *Id*. ¶ 5. Settlement Class Members can call and interact with an interactive voice response ("IVR") system that provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id*. The Toll-Free Number appeared in all Notices, as well as in multiple locations on the Settlement Website. The Toll-Free Number will remain active through the close of this Settlement Program. The telephone number has received a total of 154 calls since it was established. *Id*.

The timing of the Claims Process was structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. Settlement Class Members were given 60 days from the date notice was mailed to file objections or to opt-out of the Settlement. As of August 6, 2025, no Settlement Class Members have sought to be excluded from the Settlement, and no Class Members have objected. *Id*. ¶ 22. The Settlement Class has responded favorably to the Settlement, with the claims rate already being roughly 6.15% (3,840 claims) of the Class Members who were issued direct Notice of the Settlement. *Id*. ¶ 18. With a month yet to go before the September 9, 2025 Claims Deadline, it is likely that the final Claims Rate will exceed 7%. This is a great result for data privacy class actions where claims rates generally fall between 1-3%. Counsel Decl. ¶ 8.  It is a particularly high Claims Rate given that approximately one-third of the Settlement Class could not be sent direct notice by U.S. Mail.

The Opt-Out and Objection deadline closes on August 11, 2025, and the Claims Period closes on September 9, 2025, with 3,840 claims filed through August 6, 2025. Kroll Decl. ¶¶ 18,

21. Kroll continues to accept and review claims submitted by Settlement Class Members through the claims filing deadline.

## IV.    LEGAL ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate

"Per Federal Rule of Civil Procedure 23(e), a class action may only be settled with the court's approval." *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (citing Fed. R. Civ. P. 23(e)). In contemplating whether to grant final approval, the Court must consider various factors; namely, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment;

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In granting preliminary approval, this Court made an initial determination that the Settlement is fair, reasonable, and adequate under Rule 23(e). The Court should now finally determine that the Settlement is fair, reasonable, and adequate and should be approved.

Further, the Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). The Fourth Circuit established four factors upon which fairness turns: "(1) the posture of the case at the time

settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991). As to adequacy, the Fourth Circuit considers "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

These factors were satisfied when the Court granted preliminary approval, and remain unchanged. Thus, the Court should find that the Settlement is fair, reasonable, and adequate for the purpose of granting final approval.

### 1. The Settlement Class Was Adequately Represented

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). The interests of the Settlement Class Representatives are not antagonistic to Settlement Class Members. The interests of the Settlement Class Representatives are the same as all Settlement Class Members, as they are asserting the same claims and injuries arising from the Security Incident as those faced by Settlement Class Members at large. The Settlement Class Representatives actively participated in the litigation including, at all times, regularly maintaining contact with counsel, assisting in the investigation of the case, reviewing their respective Complaint(s), producing information and documentation to Class Counsel, remaining available for

consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. Counsel Decl. ¶¶ 15-16.

Further, Settlement Class Counsel's experience and qualifications have been recognized by this Court in the decision to appoint Settlement Class Counsel. *See* Doc. 58 ¶ 2. Class Counsel and Plaintiffs' Counsel have zealously litigated Plaintiffs' and Settlement Class Members' claims, and worked tirelessly to resolve this case in Plaintiffs' and Settlement Class Members' favor. *See* Doc. 63-1, Declaration of Raina C. Borelli in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards; *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 2. The Proposed Settlement Was Negotiated at Arm's Length

The Parties negotiated the Settlement at arm's length, absent collusion, based on the terms of the Settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, Rodney Max, Esq. Counsel Decl. ¶ 2. *See In re NeuStar, Inc. Sec. Litig.*, No. 1:14-CV-885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations); *see also* Doc. 53 ¶ 8 (Joint Declaration of Plaintiffs' Counsel).

### 3. The Relief Is Fair, Reasonable, And Adequate

The proposed Settlement provides Settlement Class Members with favorable relief given their alleged injuries arising from the Security Incident and is commensurate with the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits that are tailored to the circumstances underlying this litigation, including recovery in the form of a

11

Pro Rata Cash Payment (now anticipated to be $113 to $124); two years of medical identity theft and one-bureau credit monitoring, and reimbursement for Out-of-Pocket Losses up to $10,000 per Class Member. Doc. 53-1 (S.A_., ¶¶ 2.1, 2.2.

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Counsel Decl. ¶ 4. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429,434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

### a. The Costs, Risk, And Delay of Trial and Appeal.

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. As outlined in the preliminary approval motion, Plaintiffs face significant risks and costs if litigation continues. While Plaintiffs are confident in their claims, there exist serious risks for Plaintiffs surviving the class certification stage as data breach class actions are notoriously risky cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach

cases…are particularly risky, expensive, and complex."). Further, Plaintiffs must also survive other case dispositive motions, such as motions for summary judgment, along with *Daubert* motions on damages methodologies. Even if Plaintiffs survive on a motion for class certification and proceeded to trial, there still remain the complexities and risk involved with maintaining class certification through trial.

While continued litigation posed potential threats to Plaintiffs' ability to recover for the Settlement Class, the proposed Settlement provides effective and immediate relief to Settlement Class Members. The Settlement ensures (1) reimbursement for fairly traceable Out-of-Pocket Losses; (2) pro rata Cash Payments, currently estimated to be between $113 to $124; and (3) Credit Monitoring Services. Doc. 53-1, § 2.1(b), 2.2. Settlement Class Members who submit a Claim Form can then receive payment of their claim via check by mail, or via PayPal, Venmo, or such other electronic payment platform deemed efficient and appropriate by the Claims Administrator. Ex. 1, § 2.1(c). These are tangible benefits that may not have been available to Settlement Class Members were this case taken to trial. Accordingly, the substantial costs, risk, and delay of proceeding to a trial and engaging in a potential appeal demonstrate that the proposed Settlement is adequate, and a successful resolution for Plaintiffs and Settlement Class Members.

### b. The Method of Distributing Relief Is Effective.

The Settlement outlines an efficient and effective method of distributing relief to Settlement Class Members. The Notice disseminated by Kroll plainly and clearly articulated the available relief to Settlement Class Members. Specifically, the Notice outlined the benefits afforded to Settlement Class Members, and their avenues for securing different forms of relief.

Kroll provided efficient and effective notice to the Settlement Class. As part of the Notice program, Kroll disseminated individual notice through the Short Form postcard notice, which was sent by U.S. Mail. This direct mail notice reached approximately 60,762 (or 97.4%) of the Settlement Class Members for whom Kroll had addresses. Kroll Decl. ¶ 15. Kroll also issued publication notice as a supplementary form of informing Settlement Class Members for whom Defendants did not have addresses, resulting in an overall notice "reach rate" that exceeds 70%. *Id* ¶ 16. Additionally, Kroll established and continues to maintain the Settlement Website, a toll-free telephone number, and a P.O. Box for the purposes of communicating with Settlement Class Members. In sum, Settlement Class Members received effective and efficient notice of the relief offered.

Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief was both efficient and effective, and the proposed Settlement is adequate under this factor.

### c. The Terms Relating to Attorneys' Fees Are Reasonable.

Class Counsel requested $306,139.38 (1/3 of the Settlement Fund) in attorneys' fees and $11,284.05 in reimbursement for costs and expenses. Class Counsel's request is on par with awards routinely granted by the Fourth Circuit[4] and reflects a multiplier of 1.02 based on Plaintiffs' Counsel's lodestar of $299,237.20. Doc. 63-1 Exhibit A. As anticipated, additional time has been spent by Plaintiffs' Counsel since the Motion for Attorneys' Fees was filed, and Plaintiffs' Counsel's total lodestar is now $314,992.07, representing a negative lodestar

---

[4] *See, e.g., McAdams v. Robinson*, 26 F. 4th 149, 162 (4th Cir. 2022) (approving attorneys' fees of $1,300,000 or 43% of the $3,000,000 settlement); *Chrisman v. Pizza*, No. 5:19-CV-155-BO, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) (collecting cases and noting that Fourth Circuit courts have frequently found fee requests of 1/3 of the settlement fund reasonable).

multiplier of 0.97. Counsel Decl. ¶¶ 12-13. The fees and costs are factually well supported by the declarations of Settlement Class Counsel. *See* Doc. No. 63-1. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award or the requested service awards. This factor supports approval of the proposed Settlement.

### d. Any Agreement Required to Be Identified Under Rule 23(e)(3)

There exist no additional agreements between the Parties, aside from the proposed Settlement, or with others made in connection with the Settlement. Thus, this factor weighs in favor of final approval of the Settlement.

### 4. The Proposed Settlement Treats Settlement Class Members Equitably

Settlement Class Members are treated equitably relative to one another because all Settlement Class Members have similar claims arising from the Security Incident and all Settlement Class Members are subject to the same treatment under the terms of the proposed Settlement. Fed. R. Civ. P. 23(e)(2)(D). Specifically, all Settlement Class Members will have the same opportunity to file a claim for Out-of-Pocket Losses; this means that monetary compensation will be apportioned in accordance with each claimant's injury. Doc. 53-1, § 2.1(b). Additionally, all Settlement Class Members may claim a *pro rata* portion of the Settlement Fund (after payments for Credit Monitoring, Out-of-Pocket Losses, notice and claims administration, attorneys' fees and costs, and service awards), with no Settlement Class Member obtaining any greater relative benefit over another. *Id.*

### 5. There Is No Opposition to The Settlement

Finally, the Court should weigh whether there exists opposition to the Settlement. *Jiffy Lube*, 927 F.2d at 158-59. After a publicized and substantial direct notice campaign, no Settlement Class Members submitted an objection. Counsel Decl. ¶ 8. As discussed above,

15

the reaction of the Settlement Class to the Settlement has been extremely positive as *zero* objections were filed and no opt-outs were received. *See* Kroll Decl. ¶ 22. Further, 3,840 claim forms were timely submitted to Kroll, which is an excellent claims rate of 6.15%. *Id*. ¶ 18. Therefore, the Settlement Class Members' significant support and participation in the Settlement weighs in favor of granting final approval.

**B.    The Court Should Finally Certify the Proposed Settlement Class**

Settlement classes are routinely certified in consumer data breach cases.[5] There is nothing unique about this case that would require the Court to find otherwise. Moreover, when this Court granted preliminary approval of the Settlement, it found it appropriate to preliminarily certify the Settlement Class. *See* Doc. 58 ¶ 1.

The Settlement Class continues to fulfill the Rule 23(a) and Rule 23(b) requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority asserted in the Motion for Preliminary Approval and which were preliminarily approved and deemed adequate by the Court. Doc. 58 ¶ 1. Because these circumstances remain unchanged since the Court granted preliminary approval, the Court should finally certify the Settlement Class for settlement purposes.

**C.    Notice to the Settlement Class Complied With Due Process And Rule 23**

---

[5] *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. l:16- cv-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.*, No. l:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

The Court previously approved the Notice Plan proposed in this case and found it satisfied all requirements of due process and Rule 23. Doc. 58. Through the individual notice efforts alone, the Notice Plan was successfully implemented and reached over approximately 97.4% of the Settlement Class for whom Kroll had mailing addresses. *See* Kroll Decl. ¶ 15. Kroll also issued publication notice as a supplementary form of informing Settlement Class Members for whom Defendants did not have addresses, resulting in an overall notice "reach rate" that exceeds 70%. Id ¶ 16. The Settlement Website, www.ptwandmawcsettlement.com, allows visitors to download the Long Notice, the Short Notice, the Claim form, and other Court documents such as the Motion for Preliminary Approval and Settlement Agreement, as well as allowing them to submit claims electronically, submit questions to the Settlement Administrator, find answers to frequently asked questions, view important dates and deadlines, and contact the Settlement Administrator.

The Notice Plan meets the requirements of Rule 23 and due process, as evidenced by its reach of over 70% of the identified Settlement Class Members. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (notice that reaches between 70 and 95 percent of the class deemed effective).

This Notice Program was preliminarily approved by this Court and is consistent with notice programs approved by courts across the United States. *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) (internal citation omitted); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 766 (D. Md. 2022) (notice acceptable where it "was either mailed or emailed to each class

member, and the administrator also set up a dedicated website and toll-free number for class members to access or call."). The high, 6.15% claims rate demonstrates the effectiveness of the Notice Program. Thus, the Court should find that the Settlement Class received the best notice practicable under the circumstances in compliance with Rule 23 and due process.

### D. The Court Should Approve the Requested Attorneys' Fees, Expenses, and Service Awards

#### 1. The Requested Attorneys' Fees and Expenses are Reasonable

As demonstrated by Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards (Doc. 62) and the Memorandum in Support (Doc. 63), the requested attorneys' fees, costs, and expenses are reasonable under the common fund approach favored in the 4th Circuit, are consistent with percentage fee awards previously granted by courts in the 4th Circuit (including comparable awards in data privacy cases), and should be approved. In addition to seeking attorneys' fees in the amount of $306,139.38, Class Counsel requests an award of $11,284.05 for litigation costs and expenses reasonably and necessarily incurred by counsel in connection with this litigation. Settlement Class Counsel diligently and zealously pursued this litigation to achieve an excellent for the Plaintiffs and Settlement Class Members. *See* Doc. 63-1; Declaration of Raina Borelli. ¶¶ 3-14.

As of July 28, 2025, Settlement Class Counsel had devoted 392.1 hours to prosecuting this case, for a lodestar total of $299,237.20, and expenses in the amount of $11,248.05. *See* Doc. 63-1, Exhibit A. At the time of filing Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards, the requested fee award and lodestar reflected a negligible multiplier of 1.02.

Since the filing of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards, Settlement Class Counsel have accrued an additional 15.4 hours of work on this matter, representing an additional $15,754.87 in attorneys' fees. Counsel Decl. ¶ 12. Thus, the total lodestar is now $314,992.07, with the final approval hearing still to come, and continued work on the processing of claims and distribution of class benefits and closing out the settlement. *Id*. The total fees incurred will ultimately result in a negative multiplier. Federal courts have previously found that negative lodestar multipliers presumptively establish the reasonableness of the fee request.

### 2.  Plaintiffs' Requested Service Awards are Reasonable

Plaintiffs have requested a $5,000 service award ("Service Awards") for each of the Settlement Class Representatives, totaling $15,000. Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (internal quotation omitted). In *Berry*, the Fourth Circuit stated that such awards are "fairly typical in class action cases" and upheld $5,000 service awards as within the district court's discretion "because the Class Representatives acted for the benefit of the class." *Id.* (citation omitted).

Courts in this district routinely grant service awards of greater than the requested amount. *See Brown*, 318 F.R.D. at 578-79 (citing *Cappetta v. GC Servs. LP*, No. 3:08-cv-288(JRS) (E.D. Va. Apr. 27, 2011); *Henderson v. Verifications Inc.*, No. 3:l l-cv-514 (E.D. Va. Mar. 13, 2013); *Pitt v. Kmart Corp.*, No. 3:l l-cv-697 (E.D. Va. May 24, 2013); *Conley v. First Tennessee Bank*, No. l:10-cv- 1247 (E.D. Va. Aug. 18, 2011) (each of the foregoing

cases awarded a $5,000 service award to one or more named plaintiffs); *Ryals v. HireRight Solutions, Inc.*, No. 3:09-cv-625 (E.D. Va. Dec. 22, 2011) (awarding a $10,000 service award to each class representative)). In determining the reasonableness of a service award, courts contemplate "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. 2016) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the Settlement Class Representatives have represented the Settlement Class appropriately, making the requested Service Awards suitable. Counsel Decl. ¶ 16. Specifically, the Plaintiffs made themselves available to Settlement Class Counsel to assist with the investigation into their claims. *Id.* The Plaintiffs assisted Settlement Class Counsel and Plaintiffs' Counsel by providing information, which was necessary to the drafting of Plaintiffs' Consolidated Amended Class Action Complaint, and made themselves available throughout the negotiation process to offer information and insight, including reviewing and approving the settlement demand, final settlement amount, and Settlement Agreement. *Id.* The Settlement Class Representatives acted in the best interests of the Settlement Class. *Id.* The Court should therefore award Plaintiffs the reasonable and typical Service Awards in the amount of $5,000 each ($15,000 total).

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter an order finally approving the Settlement..

Dated: August 8, 2025                          Respectfully submitted,

                                              /s/Lee A. Floyd
                                              _____

                                              Lee A. Floyd, VSB #88459
                                              Sarah G. Sauble VSB #94757
                                              **BREIT BINIAZAN, PC**
                                              2100 East Cary Street, Suite 310
                                              Richmond, Virginia 23223
                                              Telephone: (804) 351-9040
                                              Facsimile: (804) 351-9170
                                              *lee@bbtrial.com*
                                              *sarah@bbtrial.com*

                                              David K. Lietz (pro hac vice)
                                              **MILBERG COLEMAN BRYSON
                                              PHILLIPS GROSSMAN, LLC**
                                              5335 Wisconsin Avenue NW
                                              Washington, D.C. 20015-2052
                                              Telephone: (866) 252-0878
                                              Facsimile: (202) 686-2877
                                              *dlietz@milberg.com*

                                              Andrew J. Shamis, Esq. (*pro hac vice*)
                                              **SHAMIS & GENTILE P.A.**
                                              ashamis@shamisgentile.com
                                              14 NE 1st Ave., Suite 705
                                              Miami, Florida 33132
                                              Tel: (305) 479-2299
                                              *ashamis@shamisgentile.com*

                                              Raina Borrelli (*pro hac vice*)
                                              **STRAUSS BORRELLI PLLC**
                                              980 N Michigan Ave, Suite 1610
                                              Chicago, IL 60611
                                              Tel: (872) 263-1100
                                              *raina@straussborrelli.com*

                                              *Attorneys for Plaintiffs and the Class*